# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:08-cr-356-18-WSD |
| LUZ MARINA LOAIZA-CLAVIJO, | |
| Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge E. Clayton Scofield, III's three Reports and Recommendations ("R&Rs") [817, 820, 865] regarding Luz Marina Loaiza-Clavijo's ("Defendant") Motion to Suppress Vehicle Search [339], Motion to Suppress Search of Home [340], Motion to Suppress Wire Taps [347], and Brief in Support of Admission of Polygraph Evidence [796].

## I. BACKGROUND[1]

In June 2006, a drug and money laundering investigation was initiated by agents of the Internal Revenue Service and Immigration and Customs Enforcement. As part of this investigation, a number of wiretaps on targeted

---

[1] The parties have not objected to the facts set out in the R&R and, finding no plain error, the Court adopts them. The factual background and procedural history of this case is laid out in detail in the R&Rs.

telephones were authorized. On September 2, 2008, Defendant was indicted, along with others, on narcotics and money laundering charges. On October 28, 2008, a search of Defendant's home and vehicle pursuant to a search warrant was conducted. On November 4, 2008, a superseding indictment was issued.

In the superseding indictment, Defendant is charged with: (1) conspiring to knowingly and intentionally distribute and possess with intent to distribute marijuana and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(vii), 846; (2) conspiring to knowingly conduct and attempt to conduct financial transactions in and affecting interstate commerce involving the proceeds of unlawful drug activity with the intent to promote the carrying on of that unlawful drug activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i); (3) conspiring to transfer funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of unlawful drug activity in violation of 18 U.S.C. § 1956(a)(2)(A); and, (4) conspiring to knowingly transfer United States currency that was the proceeds of unlawful drug activity from a place in the United States to and through a place outside the United States and knowing that the transfer was in whole and in part to conceal the source of the proceeds of the unlawful drug activity and avoid a

transaction reporting requirement in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i), 1956(a)(2)(B)(ii).

On February 3, 2009, Defendant filed her Motion to Suppress Wire Taps [347], Motion to Suppress Vehicle Search [339], and Motion to Suppress Search of Home [340].

On April 21, 2010, a competency hearing was held and Defendant was found incompetent to stand trial.

On May 10, 2010, Defendant submitted to a private polygraph examination. The examination was not recorded, the Government was not given advance notice of the examination or an opportunity to attend, and there is no indication on the Polygraph Report submitted by Defendant that the examiner knew that she was considered incompetent to stand trial at the time of the examination. (Exs. to Aff. of Marc E. Foster).

On May 27, 2010, Defendant was ordered committed to the custody of the Attorney General and was admitted to the Federal Medical Center-Carswell in Fort Worth, Texas, for hospitalization, evaluation, and treatment.

On August 19, 2010, Defendant filed her notice of intent to use the polygraph evidence from the examination conducted on May 10, 2010.

On September 8, 2010, Defendant was released from the Federal Medical Center-Carswell and returned to the Northern District of Georgia. On June 29, 2011, the Court found, after holding a hearing, that Defendant was competent to stand trial.

On July 7, 2011, a pretrial conference was held and the parties were directed to file briefs regarding the outstanding evidentiary issues before the Court. After the parties filed their responsive briefs and affidavits, the Magistrate Judge issued three Reports and Recommendations.

On October 7, 2011, the Magistrate Judge recommended in his First R&R [817] that the Motion to Suppress Wire Taps [347] be denied.

On October 14, 2011, the Magistrate Judge recommended in his Second R&R that the Motion to Suppress Vehicle Search [339] and Motion to Suppress Search of Home [340] be denied.

On January 25, 2012, the Magistrate Judge recommended in his Third R&R that Defendant's request to admit polygraph evidence from the May 10, 2010, examination be denied.

Defendant did not object to the First and Second R&Rs. On February 8, 2012, Defendant filed her objection to the Third R&R. Defendant objected to the Third R&R on the grounds that it "is the expression of a policy to exclude

4

polygraph evidence, which is contrary to United States v. Piccinonna, 885 F.2d 1529, (11th Cir. 1989), as opposed to an expression of a particular evidentiary problem with this particular polygraph test as revealed by the particular evidence in this case." (Def.'s Obj. to Third R&R [877] at 3).[2]

## II. DISCUSSION

### A. Standard of Review on Magistrate Judge's R&R

After conducting a careful and complete review of a magistrate judge's findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "'give fresh consideration to those issues to which specific objection has been made by a party.'" Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess. (1976)). With respect to those findings and

---

[2] The Court notes that Defendant makes a number of broad, conclusory objections to the conclusions and recommendations in the Third R&R. The Court declines to construe these as valid objections. See Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988) ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court.").

recommendations to which a party has not objected, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

No objections were filed regarding the recommendation that Defendant's Motion to Suppress Vehicle Search [339], Motion to Suppress Search of Home [340], and Motion to Suppress Wire Taps [347] be denied and, having reviewed the findings and recommendations in the R&Rs and finding that the Magistrate Judge did not plainly err, the Court adopts the recommendations. Because Defendant filed a timely objection to the recommendation that Defendant's polygraph evidence be deemed inadmissible, the Court conducts a *de novo* review of the Magistrate Judge's recommendation concerning the admissibility of polygraph evidence.

    B.    Analysis

        1.    *Polygraph Evidence*

In our Circuit, polygraph evidence is admissible in two specific instances: (1) when both parties stipulate in advance as to the circumstances of the test and as to the scope of its admissibility; and, (2) when used to impeach or corroborate the testimony of a witness at trial. United States v. Piccinonna, 885 F.2d 1529, 1536 (11th Cir. 1989). To be admissible to impeach or corroborate, three

preliminary conditions apply: (i) the party intending to introduce the evidence must provide adequate notice to the opposing party; (ii) the opposing party must be provided a reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions; and, (iii) the polygraph evidence must satisfy the admissibility requirements of the Federal Rules of Evidence. See id. "Even where the above three conditions are met, admission of polygraph evidence for impeachment or corroboration purposes is left entirely to the discretion of the trial judge." Id.

The parties have not stipulated to the admission of polygraph evidence. This evidence thus may be admitted only for impeachment or corroboration, and only if Defendant satisfies the required preliminary conditions.

The Government concedes that Defendant gave the required notice of her intent to introduce polygraph evidence and that it has had a reasonable opportunity to conduct its own polygraph examination. (Government's Opp'n to Def.'s Notice of Intent to Use Polygraph Evidence at Trial at 6). The Court, however, concludes that the polygraph examination results are, based on the facts here, not admissible.

Having considered the record and arguments of the parties as part of its *de novo* review of Defendant's Objection to the Third R&R, the Court concludes the polygraph evidence is not admissible in this case for two reasons: (1) it does not

7

meet the requirements of Federal Rule of Evidence 702 and the principles regarding the admissibility of expert testimony established in Daubert v. Merrell-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); and, (2) its probative value is substantially outweighed by its prejudicial effect, including because of its propensity to mislead the jury and confuse the issues, and requires that it be excluded under Federal Rule of Evidence 403.

        *2.*     *Federal Rule of Evidence 702 and Daubert*

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

To exercise properly its role under Daubert as a gatekeeper to the admission of scientific testimony, the Court must consider whether (i) the expert is qualified to testify regarding the matters he intends to address, (ii) the expert's methodology is sufficiently reliable, and (iii) the expert's testimony assists the trier of fact to understand the evidence or to determine a fact in issue. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41 (11th Cir. 2003).

Daubert sets forth a non-exclusive checklist for use in evaluating the reliability of scientific expert testimony. The factors include: (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. Daubert, 509 U.S. at 593-94. The Court is not required to consider each of these factors, "and a federal court should consider any additional factors that may advance its Rule 702 analysis." Quiet Tech. DC-8, Inc., 326 F.3d at 1341.

In applying the Daubert criteria, the Court must determine if the expert unjustifiably extrapolated from an accepted premise to an unfounded decision. See Gen. Electric Co., 522 U.S. at 146. That is, there must not be "too great an analytical gap between the data and the opinion proffered." Id. The Court must be assured that the expert is using "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S.

at 152. "[N]ot only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules." Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir. 1999). The focus must be on the principles and methodology and not the conclusions reached. Daubert, 509 U.S. at 595.[3]

As the proponent of the polygraph evidence, Defendant is required to offer evidence to establish the polygraph evidence at issue here is reliable. To meet this burden, Defendant has offered an affidavit from a proffered expert in polygraph examination, and affidavit from the polygraph examiner who administered the examination, and a book entitled The Polygraph and Lie Detection. This evidence is offered to show the reliability of the polygraph examination, the polygraph examiner's qualifications, and some, but not all, of the procedures and circumstances for the administration of the examination. See Fed. R. Evid. 104, 702; Bourjaily v. United States, 483 U.S. 171, 175-76 (1987); United States v. One Parcel of Real Estate at 298 N.W. 45th Street, Boca Raton, Fla., 804 F. Supp. 319, 322 (S.D. Fla. 1992), aff'd, 12 F. 3d 218 (11th Cir. 1993). The Government concedes that the general theory or technique behind polygraph testing "has been

---

[3] Defendant did not request a hearing on her request to admit polygraph evidence in her Objection to the Third R&R and, having reviewed the record, the Court determines a hearing is not necessary to decide the issues presented.

10

subjected to numerous studies, research, peer review, and publication over nearly a century." (Government's Opp'n to Def.'s Notice of Intent to Use Polygraph Evidence at Trial at 8). In evaluating the evidence submitted by Defendant and the remaining factors governing the admissibility of expert testimony, the Court concludes that Defendant's proffered polygraph evidence fails to satisfy the requirements under Federal Rule of Evidence 702 and <u>Daubert</u>.

        a.     <u>Whether the technique or theory can be adequately tested</u>

The Court agrees with the opinion of the Magistrate Judge that the evidence presented by Defendant fails to demonstrate that her polygraph evidence is sufficiently reliable to be admissible under Federal Rule of Evidence 702 and <u>Daubert</u> because "neither the theory nor the technique of polygraph testing used in this case has been or can be adequately tested." (Third R&R at 9). For polygraph expert testimony to be admissible to impeach or corroborate, <u>Daubert</u> requires evaluating whether it can be challenged in some objective sense and determining that it is not simply a subjective, conclusory approach that cannot reasonably be assessed for reliability. 509 U.S. at 593-94. <u>Piccinonna</u>'s requirement that an opposing party be provided a reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions also reflects the

concern under Daubert that any polygraph examination be testable.  See Daubert, 509 U.S. at 593-94; Piccinonna, 885 F.2d at 1536.

Here, Defendant took a private polygraph examination without providing the Government an opportunity to attend, without having it videotaped, and did not notify the Government of the administering of that examination until three months after the fact.  The private polygraph examination was conducted after Defendant was declared incompetent to stand trial, but before she was committed to the custody of the Attorney General.

Defendant concedes that the results of the polygraph examination "are not reproducible," are subjective and "very examiner / examinee dependent," and only reflect Defendant's mindset on the day of the examination and all the surrounding circumstances that were then in existence.  (Def.'s Br. in Supp. of Admission of Polygraph Evidence at 18, n.2).  Even if the Government were to conduct its own examination between now and trial, it could not replicate the results of May 10, 2010, because "the circumstances . . . have changed" including because Defendant's mental state is different and she is now competent to stand trial.  (Id.).

The Government has been deprived of any reasonable opportunity to objectively test and challenge the Defendant's polygraph results because of Defendant's failure to notify the Government of the private polygraph examination

or to afford it an opportunity to attend or conduct its own examination before her incompetency was treated at the Federal Medical Center-Carswell. The impact of this failure is aggravated considering that the examination was conducted while Defendant was deemed incompetent to stand trial and later found to be competent. The Government was denied the opportunity to conduct its own test under similar circumstances. See Daubert, 509 U.S. at 593-94; Piccinonna, 885 F.2d at 1536.

The Court finds that Defendant's polygraph evidence is based on a subjective, conclusory approach; cannot be objectively challenged in these circumstances; and that Defendant deprived the Government of a reasonable opportunity to objectively challenge and test the private polygraph results by conducting its own examination under similar circumstances and conditions. Under these circumstances, and because Defendant's subjective technique is not able to be challenged in an objective sense, the Daubert reliability factor regarding whether the technique or theory can be adequately tested weighs significantly against admissibility.

> b. Known or potential rate of error of the technique or theory applied

"'[P]olygraphy is a developing and inexact science.' . . . Resolution of the issue presented in this case requires an understanding of the various techniques that can be used to administer a polygraph examination." United States v. Gilliard, 133

F.3d 809, 812 -813 (11th Cir. 1998) (quoting Piccinonna, 885 F.2d at 1535).  Our Circuit has observed that in this inexact science "the only thing the polygraph examination 'proves' is that the examinee believes her own story."  Norelus v. Denny's, Inc., 628 F.3d 1270, 1284 (11th Cir. 2010) (quoting Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1269 n.30 (11th Cir. 2007)).  The Polygraph and Lie Detection—the book relied upon by Defendant in support of admissibility—gauges the accuracy of polygraphs "in discriminating lying from truth telling at rates well above chance, although well below perfection."  (Third R&R at 10).

While not known to a numerical certainty, the Court finds that the known or potential error rate in polygraph examination weighs against admissibility under Federal Rule of Procedure 702 and Daubert.  An examination that is better than mere chance, based on inexact science, and which, at most, proves only a subjective 'truth' is simply not accurate or reliable enough to satisfy the requirements for admissibility of expert testimony.  The danger of allowing this inaccurate and inexact form of expert testimony to be presented to a jury is amplified when combined here with the subjectivity of the examination and inability for the results to be objectively examined and reproducibly tested.

### c. The existence and maintenance of standards and controls

The polygraph examiner acknowledges, and it is undisputed, that the governing guidelines and professional standards for administering polygraph examinations are the Standards of Practice of the American Polygraph Association ("APA Standards"). (Ex. to Aff. of Marc E. Foster ("APA Standards")). The polygraph examiner admits that he "did not record the polygraph test (as is required [per the APA Standards]) because of the possible effect that recording might have had in the testing environment." (Aff. of Marc E. Foster ¶ 3); APA Standards 3.2.1, 3.9.9.

The Government points out that the evidence submitted by Defendant in support of admitting the polygraph testimony does not allow for a determination of adherence to at least four APA Standards. (Government's Opp'n to Def.'s Notice of Intent to Use Polygraph Evidence at Trial at 8).

Defendant does not address any of the Government's arguments regarding the failure to adhere to the APA Standards during the polygraph examination in either her reply to the Government's memorandum or in her Objection to the Third R&R. Defendant has failed to demonstrate that sufficient standards and controls were maintained during the polygraph examination and the failure to record the

examination precludes the Court from being able to verify that the examination adhered to APA Standards.

The Court also has reviewed the record and notes that the polygraph examiner indicated on the "Polygraph Examination and Background Worksheet," as required by the APA Standards, that Defendant was taking medication for thyroid cancer but did not mention that Defendant had been determined to be incompetent to stand trial. (Ex. to Aff. of Marc E. Foster); APA Standards 3.2.1, 3.4.1, 3.4.2, 3.9.9. The "Polygraph Report" also indicates that the polygraph examination occurred at the State Bar of Georgia Building in Atlanta, Georgia, but does not describe the location, room, or circumstances under which the examination was conducted and if it conformed with the APA Standards. (Ex. to Aff. of Marc E. Foster); APA Standards 3.6.1.

There is no indication on the *curriculum vitae* of Marc E. Foster that he had completed the APA required minimum of thirty (30) continuing education hours in the past two years. APA Standards 3.3.4. There also is no indication that the "Polygraph Instrument," a Lafayette LX-4000, noted on the Polygraph Report had been given the APA-required "functionality or calibration test consistent with manufacturer recommendation and in compliance with state and federal law." APA Standards 3.5.3. There also is no clear indication that the APA Standards

regarding pretesting and testing requirements were complied with during Defendant's polygraph examination. APA Standards 3.8.1-3.9.10.

The Court finds that there is at least one clear violation of the APA Standards in the failure to record the examination and Defendant has otherwise failed to demonstrate adherence to the APA Standards by its polygraph examiner during the polygraph examination. The circumstances noted by the Court suggest that compliance with the APA Standards did not occur and call into question the reliability of the results of Defendant's polygraph examination. The Court is not assured that Defendant's polygraph examiner used "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. This failure to maintain proper standards and controls also weighs against admissibility of Defendant's polygraph evidence under Federal Rule of Evidence 702 and Daubert.

d. General acceptance in the scientific community

The Court notes that Defendant's reliance on a 1989 case from our Circuit, Piccinonna, for the proposition that there is universal consensus that polygraph evidence is generally accepted in the scientific community is misplaced in light of United States v. Scheffer, 523 U.S. 303 (1998), Norelus v. Denny's, Inc., 628 F.3d 1270 (11th Cir. 2010), and United States v. Henderson, 409 F.3d 1293 (11th Cir.

2005). (Def.'s Obj. to Third R&R at 7). While Piccinonna recognized a trend within the scientific community indicating "increasingly widespread acceptance" of polygraph testing in the late 1980s, Scheffer, Norelus, and Henderson reflect a contemporary trend that questions the general acceptance of polygraph testing within the scientific community because of continuing questions about its reliability. See Scheffer, 523 U.S. at 309-12 (no consensus polygraph evidence is reliable); Norelus, 628 F.3d at 1284 ("Opinions based on polygraph examinations are seldom, if ever, admissible into evidence."); Henderson, 409 F.3d at 1302-03 (disagreement exists over the reliability of polygraph methodology); Piccinonna, 885 F.3d at 1535.

Because evidence and opinions based on polygraph examinations do not enjoy general acceptance within the scientific community, the Court finds that this final Daubert factor further weighs against admissibility.

Applying the Daubert factors, considering the requirements of Federal Rule of Evidence 702, and for the reasons stated above, the Court concludes that Defendant's polygraph evidence is inadmissible.

### 3. *Federal Rule of Evidence 403*

To the extent Defendant desires to admit the evidence to explain how it relates to her credibility or corroborates her testimony, the Court concludes the

prejudicial effect of the evidence substantially outweighs its probative value. Fed. R. Evid. 403; see also Gilliard, 133 F.3d at 815. The truthfulness of Defendant's testimony—if she elects to testify on her own behalf—is a matter for the jury to weigh and determine. See Gilliard, 133 F.3d at 815. The Court finds the reliability shortcomings to Defendant's polygraph examination creates a likely danger of unfair prejudice for the Government, confusion of the issues, and the potential misleading of the jury. See id. at 815-16. The introduction of Defendant's polygraph evidence will also only serve to confuse the issues that are best developed during direct and cross examination of Defendant, if she testifies, regarding whether she is truthful, whether she knew of any illegal financial transactions, or whether she was involved in a drug trafficking conspiracy. See id. In short, Defendant's polygraph evidence is also necessarily excluded under Federal Rule of Evidence 403.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge E. Clayton Scofield, III's three Reports and Recommendations ("R&Rs") [817, 820, 865] regarding Defendant's Motion to Suppress Vehicle Search [339], Motion to Suppress Search of Home [340], Motion to Suppress Wire Taps [347], and Brief in

Support of Admission of Polygraph Evidence [796] are **ADOPTED**. Defendant's Objection to the Third R&R [877] is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Vehicle Search [339], Motion to Suppress Search of Home [340], and Motion to Suppress Wire Taps [347] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's request to introduce polygraph evidence at trial is **DENIED**.

**SO ORDERED** this 17th day of February, 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE